KITCHENS, Justice,
dissenting:
¶ 46. I dissent in the instant ease for two reasons: (1) the trial judge erred in failing to make an on-the-record finding regarding which of the exceptions[41] under Mississippi Rule of 404(b) he deemed applicable, and (2) the testimony of the four women (the alleged former victims of Green) was more prejudicial than probative, thus violating Mississippi Rule of Evidence 403. Accordingly, the only proper disposition is to reverse and remand for a new trial.
¶ 47. The State proffered the testimony of three women and a teenager, who all alleged that Green had sexually abused them when they were children. The purpose of this testimony, the State argued, was that it served as evidence of one of the exceptions under Mississippi Rule of Evidence 404(b), i.e., proof of “motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.” However, the State did not specify which of the exceptions it contended the evidence tended to prove. The trial court allowed the testimony after finding that the witnesses’ allegations were overwhelmingly similar to the charged crimes in the instant case; thus, according to the trial court, the extrinsic evidence tended to prove “motive, opportunity, intent, and the other factors under 404(b).” The trial court never made an on-the-record finding as to which of the exceptions he believed the testimony tended to prove. At the conclusion of the case, the jury was instructed that the testimony of those four witnesses was before them as proof of all the enumerated exceptions under Rule 404(b).
¶ 48. Rule 404(b) of the Mississippi Rules of Evidence provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
¶49. Obviously, the rule lists its enumerated exceptions disjunctively, not con-junctively. Implicit in the listing is that a trial judge, in deciding which, if any, of the exceptions may apply to particular proffered testimony, has a duty to select one or more of them from the list. It is hard, if not impossible, to imagine an evidentiary scenario in which all of them could apply. Although in some instances more than one of the exceptions might fit, it also is arguable that some are mutually exclusive of others. For instance, a defendant’s prior act which tended to prove his identity would be unlikely also to provide proof of an absence of accident. Similarly, proof of *559 motive would not ordinarily be probative of a person’s having had an opportunity to commit a crime. Thus it is necessary that a trial judge, in applying Rule 404(b), make on-the-record findings of the several exceptions he or she deems applicable. A failure to do so impedes appropriate appellate analysis and, worse, does not provide proper guidance to jurors when, as here, all of the possible exceptions are thrown at them in an instruction. In giving jurors this sort of multiple-choice instruction, a judge with the purest and best of intentions could easily mislead them.
1150. Specifically, in this case, the trial court gave Instruction No. C-5:
The Court instructs the jury that the testimony of the state’s witnesses, [K.M.H.], [M.S.], [A.R.], and [P.B.] regarding alleged acts of the Defendant, HUGH ROGER DALE GREEN were offered in an effort to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident regarding the Defendant. You may give the testimony such weight and credibility as you deem proper under the circumstances. However you cannot and must not consider the testimony in any way regarding whether or not this Defendant is guilty or not guilty for which he is presently on trial.
¶ 51. While defense counsel was granted a continuing objection concerning the testimony of the four women, he did not object to Instruction No. C-5, which is confusing and self-contradictory. Although it may have been intended as a cautionary or limiting instruction, it is anything but that, and is likely to have generated more wonderment than enlightenment in the minds of the jurors. The judge who recently had determined that the testimony of the four women was more probative than prejudicial then undertook to inform the jurors that they should not consider the women’s testimony concerning Green’s alleged prior bad acts “in any way regarding whether or not this Defendant is guilty or not guilty for which he is presently on trial.” The only decision these jurors were called upon to make was whether Green was guilty or not guilty. If the jurors were not to consider the women’s testimony for that purpose, of what, then, was it probative? The jurors were the only people in the courtroom to whom anyone was trying to prove anything, and the testimony of these women was adduced by the only party with anything to prove: the prosecution, whose burden it was to try to prove Green guilty. While the inflammatory and prejudicial nature of the testimony is almost sure to have been of enormous assistance to the prosecution in pushing the jury toward a guilty verdict, it did nothing to help prove his guilt, and therefore was not, by definition, probative. Accordingly, it should not have been presented to the trier of fact, as its value to the prosecution is incapable of discernment anywhere other than in its overtly prejudicial nature and effect.
¶ 52. At trial, Green’s defense was that he was innocent of the charges against him. Green adduced the testimony of his son, Dakota, who had lived in the family home with D.W. and Green. In essence, Dakota’s testimony was that Green would not have had the opportunity to commit the crime charged because he never was alone with D.W. in the early mornings when most of the instances of digital penetration were said to have occurred. He testified that D.W. had told him that she had been molested by her uncle and her biological father. Nothing in the record, however, informed the jurors or this Court which of the 404(b) exceptions the trial judge thought applicable in this case, and the jury was left to speculate about the purpose for which the extrinsic evidence *560 was adduced.[42] Some jurors could have picked one set of options from the 404(b) list, while others on the jury made quite different selections. This Court certainly ought not guess about which of the 404(b) options might apply, if any. While it may be true that the defenses raised by Green conceivably created some issue of material fact other than character, that arguably would have fit one or more of the enumerated exceptions under Rule 404(b), even this would not end our inquiry, as admissibility would require that the probative value be judicially determined to outweigh the prejudicial effect under Rule 403.
¶ 58. Rule 403 provides, in pertinent part: “Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.... ” This Court in Derouen v. State, 994 So.2d 748, 756 (Miss.2008), held that “evidence of a sexual offense, other than the one charged, which involves a victim other than the victim of the charged offense for which the accused is on trial,” is admissible “if properly admitted under Rule 404(b), filtered through Rule 403, and accompanied by an appropriately-drafted limiting or cautionary instruction to the jury.”
¶ 54. In the instant case, the trial court, in addition to finding the testimony admissible under Rule 404(b), determined the testimony to be more probative than prejudicial under Rule 403. Green argues that this constituted reversible error on the part of the trial court, given the testimony’s highly prejudicial nature, and was a misapplication by the trial court of the standard set out in Derouen. I find this argument compelling.
¶ 55. The trial court erred in finding “overwhelming similarities” between the witnesses’ allegations and the crimes charged in this case, as most of the witnesses’ testimony was about alleged conduct dissimilar in nature. Given its dissimilar and inflammatory nature, the testimony was not more probative than prejudicial under Rule 403. Twenty-five-year-old M.S. testified that, when Green was her stepfather, he had molested her on multiple occasions when she was fourteen, and on one occasion had attempted to have sexual intercourse with her. Seventeen-year-old K.M.H. testified that, when she was ten years old, Green had begun fondling her on a regular basis and, on one occasion, when she was twelve years old, had raped her. According to K.M.H.’s testimony, Green had threatened to kill her mother and sister if she told anyone. Green’s half-sister, forty-nine-year-old P.B., testified that Green had sexual intercourse with her from age nine until age fifteen. P.B. testified that Green is five years older than she and that, at the time he was engaging in sexual intercourse with her, he was about fourteen or fifteen years old (a minor). The only allegations somewhat similar to D.W.’s allegations were made by Green’s niece, thirty-five-year-old A.R., who testified that, at age seven or eight, she was fondled by Green during an overnight visit to his home. Even she, however, did not relate the same specific conduct that *561 Green was alleged to have visited upon D.W.
¶ 56. With the exception of K.M.H.’s allegations, the testimony alleged incidents that were extremely remote in time. M.S. testified that she was molested eleven years earlier. P.B. testified that Green had sex with her thirty-four years ago. A.R. testified that she was fondled by Green twenty-seven years ago. Furthermore, the record reflects that Green was neither charged nor convicted concerning any of these accusations.
¶ 57. Once this highly prejudicial evidence was before the jury, it served to poison the well, such that it would have been virtually impossible for the jury not to consider the testimony as evidence that Green had acted, in the present circumstances, in conformity with his bad character. See Miss. R. Evid. 404(b) (“Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.”). Thus, the limiting instruction given by the trial court was insufficient to overcome the prejudicial nature of the testimony. Because Green was improperly prejudiced by the women’s testimony, the only proper disposition is that this Court reverse the verdict and remand for a new trial.
CHANDLER and KING, JJ„ join this opinion.

. Throughout the dissent, I refer to the enumerated "other purposes" as exceptions because the comments to Rule 404(b) read as follows: "Against the general prohibition of producing evidence of prior offenses or actions to show that the party acted in conformity with past behavior, is posited a list of exceptions ... All of the exceptions in Rule 404(b) have been recognized and applied on numerous occasions by the Mississippi Supreme Court.” (Emphasis added.)

. The trial court found that the extrinsic evidence served to "prove motive, opportunity, intent, and the other factors under 404(b).” The jury was instructed that the women’s testimony was "offered in an effort to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident_” Thus, the court verbally found that all of the evidentiary objectives authorized under Rule 404(b), plus some unnamed "other factors,” justified the testimony in question. Then, in writing, the court instructed the jury in the disjunctive ("or”), thereby leaving it to each juror to choose which options he or she thought applicable.